## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LESLIE CECILIA METCALFE,

      Petitioner,               Case Number 2:21-CV-10297
                                      HONORABLE DENISE PAGE HOOD
v.                              UNITED STATES DISTRICT JUDGE

JEREMY HOWARD,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Leslie Cecilia Metcalfe, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In her *pro se* application, petitioner challenges her conviction for delivery of a controlled substance causing death, M.C.L.A. 750.317a; and delivery of less than 50 grams of a controlled substance, M.C.L.A. 333.7401(2)(a)(iv)1)(b).  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

# I. BACKGROUND

Petitioner was convicted in the Macomb County Circuit Court, in which she was tried jointly with co-defendant Donald McCoy.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from the delivery of heroin to 20-year-old Wayne Williams and 16-year-old SL, and the death of SL, at Metcalfe's home on January 7, 2017. Metcalfe was a friend of SL's family. On the day in question, Metcalfe and SL exchanged text messages about being "depressed" and "down" and wanting to use drugs. SL asked Metcalfe if she could secure heroin. The pair talked money and Metcalfe agreed to contact her neighbor, McCoy, who could find heroin. SL and her boyfriend, Williams, walked to Metcalfe's home where they met McCoy and provided funds for heroin. McCoy purchased the drugs on their behalf. Thereafter, Williams "snorted" heroin and overdosed, but survived. SL died after ingesting the drug. The cause of death was drug abuse from a combination of heroin and fentanyl.
>
> Metcalfe did not contact 911 when she realized that SL and Williams were in distress. Instead, she called another neighbor for assistance, hid in the home of SL's father, and lied to both of SL's parents about SL's condition. The neighbor who had been summoned contacted 911 and SL was pronounced dead at the scene. Even when tracked down, Metcalfe lied and claimed that SL had only taken Xanax that she secured earlier in the day. She deleted her messages with SL and McCoy about the heroin transaction. Only when confronted with direct evidence did Metcalfe concede that McCoy purchased heroin for SL and Williams. At trial, McCoy argued that he did not intend to harm anyone. Metcalfe argued that she was not culpable because SL was a

drug user who wanted to procure drugs to share, and she did not assist McCoy in delivering the heroin.

*People v. McCoy*, No. 343597, 2020 WL 90976, at * 1 (Mich. Ct. App. Jan. 7, 2020), *lv. app. denied sub nom. People v. Metcalfe*, 506 Mich. 918, 948 N.W.2d 577 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. There was insufficient evidence to support Metcalfe's convictions of aiding and abetting delivery of a controlled substance causing death and delivery of a controlled substance less than 50 grams beyond a reasonable doubt and reversal and dismissal of the charges is required.

II. The trial court erred in scoring OV 10 for exploitation of a vulnerable victim based solely on age where there was no evidence of exploitation, and OV 14 designating Metcalfe as a leader in a multiple offender situation without sufficient support in the record requiring resentencing.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

### A. Claim # 1.  The sufficiency of evidence claim.

Petitioner claims that there was insufficient evidence presented to convict her of the crimes, because there is no evidence that she aided and abetted in the delivery of heroin which caused SL's death.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

> M.C.L.A. 750.317a proscribes delivery of a controlled substance causing death as follows:
>
> A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of ... MCL 333.7401, that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

This statute "punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death." *People v. Plunkett*, 485 Mich. 50, 60; 780 N.W.2d 280 (2010). M.C.L.A. 750.317a is a general intent crime. *Id.* The Michigan Supreme Court indicated that the statute "does not require the intent that death occur from the controlled substance first delivered in violation of MCL 333.7401.

6

Rather, the general intent required to violate MCL 750.317a is identical to the

general intent required to violate MCL 333.7401(2)(a): the delivery of a schedule 1

or 2 controlled substance." *Id.*

"The elements of delivery of less than 50 grams of heroin are (1) a

defendant's delivery (2) of less than 50 grams (3) of heroin or a mixture containing

heroin (4) with knowledge that he or she was delivering heroin." *People v.*

*Dickinson*, 321 Mich. App. 1, 12; 909 N.W.2d 24 (2017).

To support a finding under Michigan law that a defendant aided and abetted

in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other
> person;
> 2. the defendant performed acts or gave encouragement that assisted
> the commission of the crime; and
> 3. the defendant intended the commission of the crime or had
> knowledge that the principal intended its commission at the time he
> gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(citing *People v.*
*Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has held that there is no language in

Michigan's aiding and abetting statute that shows an intent by the Michigan

Legislature "to abrogate the common-law theory that a defendant can be held

criminally liable as an accomplice if: (1) the defendant intends or is aware that the

principal is going to commit a specific criminal act; or (2) the criminal act

committed by the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1, 9; 715 N.W. 2d 44 (2006)(quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745). Thus, "a defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Id.,* at pp. 14-15.

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992).

The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner*, 213 Mich. App. at 568-69.

The Michigan Court of Appeals rejected petitioner's claim:

Aiding or abetting in the context of the offenses of delivery of heroin causing death and delivery of less than 50 grams of heroin was addressed by our Supreme Court in *Plunkett*, 485 Mich. 50. In that case, the defendant drove Tracy Corson from Ann Arbor to Detroit to engage in a drug transaction. *Id.* at 53. The defendant gave Corson the money to purchase their drugs, and Corson completed the transaction with the dealer. *Id.* The defendant then drove back to his Ann Arbor apartment where he "partied" with his ex-girlfriend and Corson. *Id.* Later that night, the victim, who was Corson's friend, came to the defendant's apartment seeking drugs. *Id.* The four smoked crack cocaine together, and then Corson and the victim went in the bathroom to inject heroin. *Id.* Shortly thereafter, the victim died of a heroin overdose. *Id.* at 53-54. The district court found probable cause to bindover the defendant on an aiding and abetting theory. *Id.* at 54. Our Supreme Court affirmed that decision, explaining that the appropriate inquiry is not whether the "defendant aided and abetted *the drug dealer*" in the transaction. *Id.* at 65. "Instead, the crux of the appropriate inquiry is whether [the] defendant aided and abetted *the delivery itself* by assisting any party to that transaction. Such assistance to any party to an illegal transaction necessarily encourages, supports, or incites the commission of that crime." *Id.* (cleaned up).

Like the defendant in *Plunkett*, Metcalfe performed acts that assisted in the delivery of a controlled substance. First, it is undisputed that McCoy

9

directly purchased heroin, or a mixture containing heroin, from a third party and delivered it, and that SL died after consuming the drugs.

Second, viewed in the light most favorable to the prosecution, the evidence established that Metcalfe assisted McCoy in the commission of the crimes by laying the groundwork for him to deliver the heroin. Following a discussion about a desire for heroin, SL told Metcalfe that she had money, Metcalfe confirmed with SL that she had enough to purchase heroin, and Metcalfe contacted McCoy (a stranger to SL) for him to purchase the heroin. Metcalfe then directed McCoy and SL to visit her trailer to discuss logistics and exchange money. After purchasing the heroin, McCoy returned to Metcalfe's trailer and delivered the heroin. Metcalfe facilitated this drug transaction. Had she not done so, McCoy would not have purchased and delivered this heroin.

Third, based on the timeline of events and Metcalfe's statement to SL that she knew McCoy could "get that [amount of heroin] delivered," the jury could conclude beyond a reasonable doubt that Metcalfe intended for McCoy to deliver heroin or had knowledge that McCoy would deliver heroin at the time she gave aid and encouragement. Accordingly, the prosecution presented sufficient evidence to support Metcalfe's convictions under an aiding or abetting theory.

*People v. McCoy*, 2020 WL 90976, at * 3–4 (emphasis original).

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief.  Petitioner contacted co-defendant McCoy after SL told her she wanted to purchase heroin and had enough money to buy it.  Petitioner contacted McCoy and asked him to buy the heroin for SL.  Metcalfe asked McCoy and SL to visit her trailer to set up the drug deal.  After purchasing the heroin, McCoy returned to Metcalfe's trailer and delivered the heroin to SL.

10

In light of the evidence presented in this case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict petitioner of delivery of a controlled substance causing death and delivery of under 50 grams of heroin on an aiding and abetting theory. *See Brown v. Konteh,* 567 F. 3d 191, 209-12 (6th Cir. 2009).  In particular, "in light of the strong circumstantial evidence" that petitioner "was involved in the planning and execution of" these crimes, "at least one 'rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" *Davis v. Lafler*, 658 F. 3d 525, 535 (6th Cir. 2011)(quoting *Jackson v. Virginia*, 443 U.S. at 319 (additional citation omitted).  Moreover, when petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision that there was sufficient evidence to convict petitioner under an aiding and abetting theory was "so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting [petitioner] habeas relief." *Id.*

To the extent that petitioner argues that she should not have been convicted of the crimes because she was only aiding and abetting the purchaser, and not the deliverer, she is not entitled to relief.  The Michigan Supreme Court in *Plunkett* rejected what is sometimes known as the "procuring agent" defense:

Defendant claims that at most he assisted Corson in *obtaining possession* of heroin from Spencer, but did not assist Spencer in *delivering* heroin to Corson. Defendant's analysis, which has been accepted by the circuit court, the Court of Appeals majority, and this Court's dissent, conflates two crimes—possession and delivery—such that defendant's focus on the possessory crime obscures the delivery crime. What the lower courts and the dissenting justices have failed to appreciate is that a criminal "delivery" of narcotics necessarily requires *both* a deliverer and a recipient. Accordingly, a defendant who assists *either* party to a criminal delivery necessarily aids and abets the deliverer's commission of the crime because such assistance aids and abets the *delivery*.

*People v. Plunkett*, 485 Mich. at 62 (emphasis original).

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Sanford,* 288 F. 3d at 862 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes and possible defenses. *See e.g. Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

12

Petitioner would therefore not be entitled to challenge the Michigan Supreme Court's determination that a person who assists another person in purchasing a controlled substance is guilty of aiding and abetting in the delivery of that substance.  Petitioner is not entitled to habeas relief on her first claim.

### B. Claim # 2.  The sentencing guidelines claim.

Petitioner claims that several of the offense variables under the Michigan Sentencing Guidelines were incorrectly scored.

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d at 860.  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated her sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law

claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003); *McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer, 826* F. 3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining [her] sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating her guideline score would not merit habeas relief. *Id.* Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle her to habeas relief, because such a departure does not violate any of the petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000). Petitioner is not entitled to relief on her second claim.

## IV. CONCLUSION

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA

14

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[1]  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Although the Court believes that its decision to deny habeas relief was correct, the Court will nonetheless grant petitioner a certificate of appealability on her first claim involving the insufficiency of evidence for the following reason. Judge Shapiro of the Michigan Court of Appeals concurred in the majority opinion's decision to affirm petitioner's conviction because he felt bound by the Michigan Supreme Court's holding in *Plunkett.*  Judge Shapiro, however, questioned the rationale of the Michigan Supreme Court's holding in *Plunkett* and suggested that the Michigan Supreme Court revisit its decision:

> Throughout the many years our State has prosecuted drug offenses, possession and delivery had always been considered two different crimes. The first addresses someone who uses or abuses drugs and the second someone who sells drugs for profit. In *People v. Plunkett*, 485 Mich. 50; 780 N.W.2d 280 (2010), however, the Supreme Court, on a

---

[1] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

4–3 vote, eliminated this distinction and held that anyone who buys drugs is per se guilty of aiding and abetting the delivery of drugs. *Plunkett* was based on a simple but purely formalistic syllogism: (1) drug sellers cannot sell drugs without buyers; (2) buyers therefore assist the dealers by buying their drugs; therefore (3) buyers are guilty of aiding and abetting a drug delivery every time they buy drugs.

In *Plunkett*, the Court departed from decades of caselaw in which no court of record had held that participating in a joint purchase constituted aiding and abetting the person charged with the actual sale (i.e., delivery with intent to distribute) of the drugs. Research does not reveal a single reported case, prior to *Plunket* (sic), holding that a fellow-buyer or fellow-user may be held guilty of the far more serious offense of drug delivery. If, as *Plunkett* suggests, the clarity of its buyer-equals-abettor syllogism is so evident, why did no court in Michigan ever employ it before? *Plunkett's* holding that purchasing drugs jointly with another user constitutes aiding and abetting the drug dealer is a radical shift in the law and one which seems to be based on judicial public policy preferences rather than the text of the statute or the intent of the legislature. It elevates typical drug user behavior, i.e., the sharing of drugs and needles, to a life offense should someone die. There is no basis to conclude that the passage of a statute making dealers subject to greater punishment if the buyer dies was intended to alter the long-understood separation between dealers and buyers and how the law treats them. Moreover, such an interpretation ignores the real behavior of drug users: they share drugs and they join together in order to pool enough money to purchase, yet they are not drug dealers themselves. "Among groups of regular drug users, on any given day the role of 'dealer' might be filled by whoever happens to have gas money, a connection to a supplier or a working phone." Goldensohn*, They Shared Drugs. Someone Died. Does That Make Them Killers*?, New York Times (May 25, 2018). And it appears that given the interpretation adopted in *Plunkett*, that Michigan's statute is among, if not alone as, the most punitive in the nation. See Humphrey, *Dead on Arrival: Illinois' Drug-Induced Homicide Statute*, 14 T.M. Cooley J. Prac. & Clinical L. 277 (2013).

For these reasons I respectfully suggest that the Supreme Court use this case to reconsider the validity of the analysis in *Plunkett*, whether its reasoning is sound and whether it is consistent with substantive justice.

*People v. McCoy*, 2020 WL 90976, at * 6–7 (Shapiro, J., concurring in part and dissenting in part)(internal footnotes omitted).

"When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine." *Jones v. Basinger*, 635 F. 3d 1030, 1040 (7th Cir. 2011). The fact that three Michigan Supreme Court justices dissented in the *Plunkett* case, coupled with Judge Shapiro's suggestion in this case that the rationale behind *Plunkett* was unsound and should be reconsidered, shows that jurists of reason could decide petitioner's sufficiency of evidence differently or that the issues deserve encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(Borman, J.)(habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist found that the issue should have been decided differently). Accordingly, the Court grants a certificate of appealability on the first claim.

Petitioner is not entitled to a certificate of appealability on her remaining claims, because she failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous.  A court may grant *in forma pauperis status* if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).  Because this Court granted a certificate of appealability, any appeal would be undertaken in good faith; petitioner is thus granted leave to appeal *in forma pauperis*. *See Brown v. United States,* 187 F. Supp. 2d 887, 893 (E.D. Mich. 2002).

## V.  ORDER

**IT IS ORDERED** that:

(1)     the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

(2)    **IT IS FURTHER ORDERED** That a certificate of appealability is **GRANTED** with respect to petitioner's sufficiency of evidence claim (Claim  #  1) and **DENIED** regarding her sentencing guidelines claim  (Claim  # 2).

(3)     Petitioner will be **GRANTED** leave to appeal *in forma pauperis*.


                            s/Denise Page Hood
                            HON. DENISE PAGE HOOD
                            UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2022